Welcome to the second day of our panel sitting here in Atlanta. Judge Newsom and I are very happy and very grateful to have with us Charlene Honeywell, who is a district judge in the Middle District of Florida. She is a graduate of the University of Florida School of Law. She was appointed to the district court bench in 2009, and she resides and has her chambers in Tampa, so we're very grateful that she's here to help us with our cases. Hopefully you're aware of the lighting system. When the yellow light goes on, that means that your time is drawing to a close, so please begin to wrap up. If we take you beyond the red light, don't worry about it, just keep going. And with that, we're ready for our first case, two consolidated criminal appeals, numbers 24-10131 and 24-11499, United States v. Jason Starr and Darren Starr. And who is going first? Slund? Yes, Your Honor. Thank you, Your Honor. Counsel, may it please the court. The district court violated Jason Starr's right to present a complete defense under the Fifth and Sixth Amendments when it precluded the defense from offering any argument or evidence related to Leonard Mikalski. If the defense had been allowed to present their proffered evidence, a reasonable jury could have believed that it was Mikalski rather than Darren Starr stalking around Sarah's residence on November 18, 2017. This would have significantly undermined the government's evidence related to the existence of a conspiracy between Jason and Darren Starr and placed the entire story told by the prosecution in a different light. I guess this case comes down to the question of what sort of a nexus or link is required for third-party perpetrator evidence. Especially in a context of a case like this, where it was pretty clear that the third party that the Starrs wanted to at least present to the jury himself had an alibi at the time of the murder, right? So why don't you explore that and tell us what you think that link or nexus is or is not. Frankly, Your Honor, I think the district court got overly fixated on the fact that Mikalski had an alibi for November the 27th. It's been discussed ad nauseum, but so did my client, Jason. But more fundamentally... I just want to differ, though, right, is that, so far as I can tell, the government at least has a theory for how, despite the fact that your client had an alibi, he could have been, you know, sort of the mastermind having somebody else do it. As far as I can tell, you really don't have a theory for how Mikalski might have been the guy pulling the strings but somebody else perpetrating the crime. Your Honor, I think more fundamentally, even if we take November the 27th out of the equation entirely, the defense still would have had a constitutional right to present this evidence. The crime here is a conspiracy to commit a murder for hire, occurring on a range of dates, dating back several months and culminating in November 2017. The government's evidence at trial focused heavily upon November 18th specifically. The identity of the motorcycle rider, the motorcycle and its rider, on November the 18th was a heavily disputed fact at trial. It was a key event in the government's presentation of its case. It was a fact the government relied on heavily as evidence of a conspiracy between Jason and Darren. And it was, you know, a fact specifically the government asked the jury to rely on in its closing arguments as, you know, evidence that this conspiracy existed between Jason and Darren. So I think regardless of November the 27th and whatever might have occurred that day, the defense had a right to present this evidence to provide the jury with an alternative explanation for what occurred on November the 18th. It was relevant to a material fact disputed at trial. It undermined the government's evidence with respect to its presentation of its case and its theory that Darren was the rider on both occasions. And frankly, it placed all of those events on November 18th, which we heard tons and tons of evidence related to November 18th, the motorcycle, the text messages about the deer stand. But all of that evidence is premised upon the government's theory that it was Darren on that motorcycle that day. And if it turns out that it was not Darren but Mikalski, then it places all of that evidence in a completely different light. So what is the best evidence you have that Mikalski had an intent to do harm to the victims? Your Honor, I don't think it's required necessarily. I think the defense would have a right to present this evidence. I don't see what the best evidence is that he had some intent to do some harm to her. Your Honor, I think the district court here characterized the defense evidence of Mikalski's motive as, you know, he did this out of hatred for Jason. But that wasn't really what the defense was trying to say with their argument. Their proffered evidence was that this was a mentally unstable individual suffering from PTSD, paranoia. He had some kind of fixation with Sarah Starr to the point he's following her around the Walmart, unsettling her with his behavior. He's even mentioning her in his suicide note. Then that evening, you know, a motorcycle matching exactly the description of his vehicle shows up at Sarah's house. So the argument is not that Mikalski was, you know, a rational actor doing this out of hatred for Jason Starr, but that he was an irrational actor who was, you know, following Sarah around that same day and might have continued the same behavior he was exhibiting just hours earlier that evening. And again, I'll note that Sarah's neighbor, Clint Walters, described specifically a Harley Davidson motorcycle, which Mr. Mikalski was the registered owner of. And that matched even more precisely with the description, you know, of the vehicle seen that evening. So I would also like to, you know, discuss kind of a little bit more about the Hearn categories and why I think the Mikalski evidence made an essential element of the charge defense more or less likely than it was without this evidence. And again, I know I keep coming back to this, but this case is not a murder on November the 27th. It's a conspiracy to commit a murder for hire spanning a range of dates. The key date in the alleged conspiracy and what the government relied on extremely heavily as evidence of Jason's involvement was November the 18th, when the government alleged that Darren Starr drove his Triumph motorcycle to stake out the residence and then sent the coded text about the deer stand to Jason. So, I mean, obviously the identity of the motorcycle and its rider was heavily disputed fact. It was material, perhaps the most central fact to the trial. So evidence that that could have been Mikalski rather than Darren made a material fact at issue more or less likely. Was there evidence presented in the trial by either side about how many motorcycles of any type, of any kind, were registered in that county in Alabama at the time? No, Your Honor, but I think Darren's counsel attempted to try to inquire about, you know, other motorcycles identified in the investigation. And sort of the response from the district court and the government was, well, you can ask one question, but it can't be about Mikalski and it can't mention an investigation. So I don't think the defense got to, you know, fully and fairly explore this, you know, line of inquiry. No, this is completely aside from Mikalski. I mean, one of the avenues that I think, and this is all hindsight, of course, but one of the avenues that could have been pursued by one or both sides was to figure out how many motorcycles were registered in that county at the time. The more the number of motorcycles, the more of a chance that this motorcycle was not the one with Darren on it. The less amount of motorcycles that there were in the county, the more of a probability or likelihood that it might have been Darren or Mikalski on the bike at the time. I follow, Your Honor. I don't think there's any evidence like that in the record, you know. Hindsight is 20-20. So I do want to note, though, that the, you know, the evidence regarding November the 18th, I want to focus specifically on my client, Jason, and why it was crucial to the government's offer of proof that he participated in a conspiracy. So, you know, the evidence that the government presented tended to show that, you know, Jason and Sarah had been through a contentious divorce, and Jason had made, you know, a series of payments to Leilani Mahler that ultimately went to Darren. But the evidence establishing that those payments were made as consideration for Sarah's death were actually relatively thin. None of those payments or communications directly or explicitly mentioned Sarah. No witness testified to any sort of agreement expressed between the two brothers, you know, to commit her murder. The only communication and evidence between Jason and Darren that was alleged to even be about Sarah was the Deer Stand text on November the 18th. It was, I believe, one of the government's key pieces of evidence trying to establish the existence of a conspiracy between the two brothers that Jason agreed to participate in. However, if it was Makowski rather than Darren at Sarah's residence on November 18th, if a reasonable jury could have believed that, then those texts lose their relevance as evidence of a conspiracy because it means that Darren is less likely to be talking in code and more likely to literally be dehydrated in a deer stand somewhere. So I think without this evidence, it's less certain that Jason and Darren reached an agreement. And so Jason particularly had a constitutional right to present this evidence to challenge the existence of the conspiracy. So I think Your Honor asked earlier sort of about nexus. I think where the district court went wrong here was by failing to recognize that the events of November 18th were probative and material to the existence of a conspiracy between Jason and Darren and not only to a murder that occurred on November the 27th. Your argument is that the charge was a 1958 conspiracy. No overt act is required for a 1958 conspiracy. Therefore, the actual murder was not an element of the offense. And that makes the evidence about Makowski all the more relevant, even though there was no nexus about how he might have hired a third party to kill the victim. Correct, Your Honor. I don't think it's required for the defense to show that Makowski, you know, to sort of solve the crime for the government before they're allowed to present evidence in their own defense. They just have a right to present evidence if it makes an element of the government's case less certain. Here, the weakest element of the government's case with respect to my client Jason was, you know, where and how and when did he agree to participate in this conspiracy to effectuate the murder of Sarah Starr. And I think this evidence related to Makowski, it presents their entire narrative of, you know, this was Darren on the 18th, he's acting on behalf of Jason, they're sending these coded texts. All of that's premised upon the fact that it's actually Darren on the motorcycle that evening. But if the reasonable jury heard all of this evidence, they could have believed it was Makowski. It places everything in a completely different light. My time is running short. I do want to make one final point with respect, I guess, particularly to the sufficiency of the evidence. And that's even if Darren, even if the evidence is sufficient to Darren, it can still be insufficient as to Jason. We have to assess the evidence individually. And the evidence, I think, establishes here that Jason and Sarah were going through a contentious divorce, not that Jason wanted her dead. I see my time has expired, if there are no further questions. Thank you. Mr. Radford. If I may please the Court. We know that you were court appointed for your client, and on behalf of him and the Court, we want to thank you for your service. We truly do appreciate it. Thank you, Your Honor. I wanted to comment very briefly. It wasn't my intent to talk about the Makowski ISCU, but you questioned about the best evidence. And I think it's a mistake to view the nexus only as Makowski's ability to either commit the crime or to hire someone to do it. He is connected, and the best evidence is that he inactively engaged with all the players in the case. He was friends with Jason. He discussed with Jason the repercussions of if your wife ends up dead, here's the problem. This is going to be a problem for you, so he's actively discussing that with Jason. He's also actively encountering Sarah in the Walmart, knows of their troubles. So I think all of that together is part of the nexus. I mean, he knows these people, he lives there, and he's engaged with them. And I think that that helps make the nexus more realistic. Sure, but if you follow Ms. Lund's line of argument that this was a conspiracy, and there was no need to show who actually killed Sarah, there is still a need to show that Makowski agreed with someone else to do harm to her. And that's what I think the district court found lacking. That may or may not be right. I would disagree to this extent. I think the district court was very, very tied to the necessity of the defense, putting on a complete story, almost standing in the shoes of the prosecution. Before they could offer that evidence, they had to tie everything up. And I think that was a mistake. I don't think they have to do that. I think the defense's burden is not to prove the negative, it's to create reasonable doubt. And I'm not sure that the defense and the prosecution are on the same footing when the defense is trying to present evidence that might create reasonable doubt in the minds of a juror. The other issue that I wanted to address, and to start I will say, we are absolutely admitting that in most all circuits, what happens next, exception to hearsay, exists. I think our point is that at some point it gets taken too far. And the exception is based on the theory that I can testify, or my witness can testify about something that they heard that prompted them to take some action. The problem I think arises, and I think it arises even more after Smith v. Arizona, is that our concept of what offering something for the truth of the matter asserted is a little more honed after that decision with the forensic reports. In this case, Van Hoose testified and basically laid out the entire case of the government. And he discussed statements or facts from ten different witnesses, all the way from Jason Starr's children, their deceased mother, law enforcement in the county, Mr. Walker, the neighbor, the officers in Lake Hills, Texas, and on down the line. And what he testified to pushed that envelope, and we would say exceeded that envelope. How do you confirm the district court's instruction to the jury that this wasn't offered for the truth of the matter, or shouldn't consider it for truth of the matter? How does that factor in? I think that it was insufficient for this reason. The jury, I think, if I'm presenting Van Hoose and something he says that he heard, I think it's inherent that you have a concept of he's only saying that because it's true. Otherwise, I wouldn't be hearing it. Otherwise, he would not have acted on it. And I think that's the problem here, is if he's presenting it as the reason he did something next in his investigation, most jurors, despite that instruction, I think, would instinctively consider that to be somewhat true. Otherwise, this law enforcement officer would not act on it or would have taken it to ground, and we would have heard why it wasn't true. And I think that that is just asking too much of a jury in this case. For that testimony, what really was harmful to you? Well, I think the most harmful thing . . . I think the thing that hurt the most was his testimony about what occurred in Lake Hills, about the house burning and motorcycle burning, because it implicated Darren Starr and it implied that that was something that occurred as a way to cover up the crime or to avoid the detection. That was never said, but I think it was heavily implied, and I think the jurors got that. But that was based purely on things that he had learned from officers out in Texas. Those officers never testified. They were not subject to cross-examination, and neither was the information . . . Other than Leilani Moller and Mr. Mendez, I believe, or Montez, the issue of the motorcycle being paid for and the origins of the motorcycle, that was also something that was never presented to a witness other than Van Hoos. All right. Thank you very much. Thank you. Ms. Wilson. Your Honors, may it please the Court, my name is Chelsea Wilson, and I represent the United States, the appellate, in this case. Your Honor, Judge Jordan asked Ms. Lund a moment ago, what is your best evidence that Leonard Mikalski intended, had some intent to do some harm to Sarah Starr? The answer is, there is no evidence. The District Court all but begged Defense Counsel to provide some evidence, to proffer some evidence linking Leonard Mikalski to a murder for hire. Well, the police considered him a suspect, did they not, for a period of time? They did, Your Honor, yes. And he was going to take a polygraph. That's correct, Your Honor. And he committed suicide before the polygraph. He did, Your Honor. I don't, because everyone agrees that Leonard Mikalski was not the person who actually murdered Sarah Starr. Yes, Your Honor, so that leaves, if he's not the person who actually pulled the trigger, then he has to be someone who was connected to someone who did. The defense, in your view, had to prove the identity of that second person? Yes, Your Honor. I think that they had to. That's correct, Your Honor, but they do have the burden of showing some nexus between Leonard Mikalski and the particular crime for which the defendants were on trial, and that is murder for hire, a conspiracy for murder for hire. If he's not the shooter, they argued before the district court, they argued that he hired someone to commit the murder. That was their argument. But didn't Leonard spend a lot of time at the trial talking about the November 18th motorcycle and who was there, who was on it? I mean, didn't you indeed make that a feature at this trial? Yes, Your Honor, because the evidence showed that it was Darren Starr. That absolutely was a part of the government's evidence, and there were things that showed that that was Darren Starr. The phone pings, for example. The text messages that Darren Starr sent to Jason that coincided with the pings and things of that nature. But I want to point out that nothing ever prevented defense counsel from questioning witnesses about whether it could have been someone else on the motorcycle besides Darren Starr. In fact, they did do that with Clint Walters, for example. There was extensive questioning and cross-examination about were you able to see who was on the motorcycle? Do you know specifically what type of motorcycle it was? Were you able to tell whether it was a male or female? Could you see their clothing? And also, I want to point out that they also had the specific opportunity to ask whether anyone else associated with Sarah Starr had a motorcycle. And defense counsel chose not to ask that question, and that's found in the record. It is, if you'll give me just a moment, document 249 at page 190. Defense counsel specifically chose not to ask that question because the court was going to allow the government to then ask were you able to account for that person's presence at the time of the murder. And I think that that shows that the whole reason they wanted to introduce evidence of Leonard Mikowski being at Sarah Starr's residence on November 18th, this theory that it was him, was ultimately to point the finger at him as the third-party perpetrator. And that is where the problem lies, because there is no link between Leonard Mikowski and an actual murder for hire. We have no motive. There is no connection to anyone else at all who had some sort of intent to murder Sarah Starr. If we're talking about... Is the evidence relevant? No, Your Honor, I don't think that it is. The evidence that a third person was considered a suspect by the police, was going to take a polygraph, had been stalking Sarah, and committed suicide before the polygraph. That's irrelevant under Rule 401 in your view. I do believe, well, I believe it has a very, very low probative value because there's actually no link between that and the murder for hire. Because they conceded that he was not the shooter. The defense doesn't have a burden to prove who killed Sarah. I agree, Your Honor. Their burden, to the extent they have one, is to try to create or show to a jury that the government hasn't proven its case beyond a reasonable doubt. And I'm wondering why the Mikowski evidence doesn't go to that issue. Your Honor, I agree that they don't have a burden of proof in terms of proving who actually committed the murder. But they absolutely have a burden when it comes to showing a nexus between this third party and the particular crime that they were on trial for, which was murder for hire. And if you look at the evidence that they proffered, there is no link. What they essentially have is this guy who had one encounter with Sarah Starr nine days before the murder at Walmart, that she sent some text messages that said it was unsettling, that he was ultimately, he owned a Harley, he owned a white Ford Mustang, he was interviewed by police, he committed suicide shortly thereafter, and left a note denying any involvement and pointing the finger at Jason and his brother. In no way does that have any connection to someone else who could have murdered Sarah Starr. And I think that that's the problem. To believe that Leonard Mikowski was involved in this murder for hire, as the appellants would have the court believe, is inviting unsupported speculation by the jury. And I think that's ultimately what the district court was looking at. Sure, maybe there is some very minimal probative value given that the evidence relates to Leonard Mikowski. But any probative value is minuscule because it doesn't relate to an actual murder for hire. It relates to all, everything they have relates to this one encounter at Walmart. On the other hand, of the 403 analysis, you have a significant risk of unfair prejudice, confusing the jury, misleading the jury, and that's because this evidence is so speculative. We have to believe that Leonard Mikowski had this encounter with Sarah Starr at Walmart. And from that, he hired someone else. We don't know who, but someone else. We don't know how the person is connected to Leonard Mikowski. We don't know how the person is connected to Sarah Starr. There's no motive. So we have to assume some motive from the evidence that they've had as well or proffered. And then we have to assume, I guess based on the cars, that he then loaned out his cars, even though there's no evidence that he ever loaned out his cars, to the person who was going to go commit the murder, even though the whole thing is a conspiracy for murder for hire. And that makes very little sense because the whole point would be to distance yourself from the actual murder. Can I ask you to turn to sufficiency for a moment? In your brief, in the statement of the facts, you set out a number of facts that the district court told the jury were not admitted for the truth of the matter asserted. And I'm wondering whether that's kosher. In pages eight and nine of the brief, there are two and a half paragraphs about the motorcycle and the trailer burning in Texas and details about that that Detective or Agent Van Hoose learned. I thought that the district court, in allowing the testimony and overruling the defense objections, said that that evidence was not admitted for the truth of the matter asserted. And I'm wondering if I'm right about that, I'm wondering how much more of the factual recitation in the government's brief includes testimony that was not admitted for the truth of the matter asserted. Your Honor, I'm not sure that the facts on pages eight and nine are necessarily, like for example, one that I'm reading now, it's talking about what Agent Van Hoose learned over the course of the investigation, and that is the truth of the matter asserted, and you put it in the facts, and you rely on it for sufficiency purposes. I'm not sure that that's appropriate. Well, Your Honor, in terms of sufficiency, I am not relying on the fact that the motorcycle was burned in any way. Why is it in the statement of facts then? Your Honor, I think it's in the section where it's talking about what Agent Van Hoose learned in his investigation. Why is it relevant in the sufficiency issue or any of the other issues on appeal? Well, it's relevant because it gives context. Right, but that's the point, I think, because that testimony is not challenged on that ground. Do you understand what I'm getting at? I do, Your Honor, and I think that the reason that it is in the brief is because it gives context to the overall investigation and explaining how you even get to Darren Starr in the first place in this motorcycle. That's how Agent Van Hoose was able to connect the motorcycle to Darren Starr. So to the extent it's in there, I suspect that that's probably why, but I am happy to address sufficiency of the evidence, and the sufficiency of the evidence argument does not hint. But would you agree that it shouldn't go to sufficiency of the evidence if it wasn't admitted for the truth of the matter asserted? Are we talking about the burning of the motorcycle? Anything else that Agent Van Hoose testified about? Absolutely, Your Honor. I'm not saying, and I'm not suggesting that it's improper to put that in the statement of the facts, but if that evidence was not admitted for the truth of the matter asserted, I think it would have been better to at least drop a footnote or something to say that that testimony can't be considered substantively when you review sufficiency of the evidence or the harmlessness of any potential error. You read the brief and that seems to be a fact presented at trial for the truth and as Mr. Bradford alluded to in his argument, I don't know if he's ultimately right or wrong, but if that's admitted for the truth, that really hurts in a prejudicial way because it helps the jury to tie together Darren's improper motive. In other words, after he drove back from Alabama to Texas, lo and behold, there's a fire that burns a trailer and the motorcycle that he had driven to Alabama at the time. I don't know if there's a flavor to the evidentiary puzzle that was presented for the jury. Your Honor, a couple of things. I do want to address the sufficiency of the evidence. I think that the strength of the evidence in this case is relevant both to that issue, but also to the issue of prejudice. So I do want to address that, but I do want to note also that one, we're not relying on the evidence that Agent Van Hoose offered in terms of the effect that it had on his investigation. We're not relying on that for sufficiency of the evidence and I agree that if it wasn't offered for the truth, that we can't rely on that information just as the jury was instructed that it wasn't allowed to consider it for the truth and neither are we. So I agree with that, but I do want to point out that there was never any sort of implication that Darren Starr drove that motorcycle back to Texas and burned it to cover up his involvement. In fact, there was cross-examination of Agent Van Hoose specifically about that issue and Agent Van Hoose said, I'm not saying that he did that at all. There were multiple questions asked about whether Darren Starr burned the motorcycle up on purpose and Agent Van Hoose said, no, that's not what I'm saying at all. There's no evidence of that. No one's claiming that Darren Starr did this to cover up his involvement. So that testimony actually came out in the record, but turning to the sufficiency of the evidence, and this is based on the evidence that was admitted into the record, there's an abundance of evidence against Jason and Darren Starr in relation to this murder for hire. First... Yes, Your Honor. Well, Your Honor, it is a... Well, Your Honor, it is a fact-specific inquiry. The facts in our case are certainly going to be different than the facts in some other murder for hire. ...with almost every criminal case and the government and the defense usually try to cite analogous cases to sort of indicate where the current appeal might land, but there are no cases like that cited in your brief. I'm wondering if there just aren't anything, any cases that come close to the facts of this case. Your Honor, at least based on our research, there was not any that were factually analogous enough to be included in the brief. We did include the standard in looking at the sufficiency of the evidence, of course, and under the standard for sufficiency of evidence, the factual, basically the evidence should be viewed in the light most favorable to the government and all inferences and credibility choices should be weighed in favor of the jury's verdict here, which was guilty. And I want to talk specifically about the evidence against Jason and Darren Starr. First, and this, again, kind of ties back into Leonard Mikowski where there's none of these things, but for Jason, we have motive. There was evidence of his complete hatred for Sarah Starr. His own words in the notes that he wrote in the broken wing, his notes for his book, they are uncomfortable to read, much less to say or even more to say out loud. We have that. We have the fact that he was going through a highly contested divorce with Sarah. We have his statements to his co-worker about how frustrated he was over the divorce, that they were commiserating over their exes, and Jason told his co-worker that he knew somebody who could handle his problems for $2,000 to $3,000. We also have the encounter at Sarah Starr's house whenever she moved out of the marital home, her own words, he's going to kill me. And there's also motive for Darren Starr. The evidence was that he lived a destitute life, that when Agent Van Hoose went to the trailer in Texas, there didn't appear to be any running water, any electricity. There was a makeshift shower that was set up outside that consisted basically of plywood and a bucket that had been strung up in a tree to operate as the shower. And we also have actual payments. We have, between September and November, the two months leading up to the murder, we have payments between Jason and Darren Starr where Jason paid Darren $2,600 through a third party to then give to Darren. And part of that payment was for the motorcycle, the very motorcycle that Darren drove to Alabama to murder Sarah Starr. Was there any evidence presented by either side with regards to whether or not there were financial transactions between the brothers before that period of time? Your Honor, based on the records, there was. Based on the records that there was a forensic accountant who testified, Phil Herod, he was a retired FBI forensic accountant, and he testified that based on the bank records that he received, he did an analysis and picked out the Zelle transactions as something that did not fit with the other transactions that he reviewed from Jason Starr's records. That's what made those transactions stand out. So there was testimony about that. So we have that. We also have the very last payment happening on November 15th. Darren texts Jason and says the Eagle has landed. The very next night, he then drives his motorcycle to Alabama. On November 18th, he has arrived in Alabama, and this is important, because at 6.41 p.m., he is pinging off of the cell tower closest to Sarah Starr's residence. That's at 6.41 p.m. Just over an hour later at 7.56 p.m., he texts Jason Starr and says, I've been at the deer stand for over an hour. No show, no deer. He indicates that he is dehydrated and doesn't know what to do. He then follows that text up immediately with, I know, delete. Fast forward the week that he's there, he's pinging off of Sarah Starr's cell tower closest to her residence multiple times, and then that brings us to the morning of the actual murder. Witnesses put the testimony that Jason and his mother lived in the vicinity. Is that right? Yes, Your Honor. But there was testimony to that point. There was testimony from Special Agent Jay Burney that the tower that Darren pinged off of when he was at his mother's house was not the same tower that he was pinging off that was closest to Sarah Starr's residence. In addition to all that, we have the morning of the murder. Witnesses put the gunshots at about 6.45 a.m. A few minutes later, a motorcycle with a rider who appears to have something protruding off of his back is seen traveling away from Sarah Starr's house headed south on a shed camera down the street. Lo and behold, around 8.30 a.m. that morning, Darren Starr pings again, and this time he's on I-10 in Florida, and it's about the distance from where he would have been at the time of the murder to that location in Florida, and he's headed back to Texas. And then not only do we have Jason's words about his hatred and his motive for killing Sarah Starr, but we also have Darren's words. We have six different jail phone calls that were admitted into evidence. They're on different dates, but the theme of every single one of them is the same. Less than two months after the murder, he is on a jail call trying to get bond money. Is this for the separate offense in Texas? Yes, Your Honor. And the theme in all of them is the same. He wants bond money, somebody to bond him out. And over and over, he says, Jason owes me. Jason has the money for me. He has it set aside. I did him a huge favor. He tells his own mom, I can't tell you why or what for, but Jason has the money for me. There is an abundance of evidence against Jason and Darren, and I do want to point out, too, that this is all against the backdrop of Sarah and Jason's own daughter, Hattie Starr, who testified at trial, who said Darren didn't come around much. The only two times that she ever even remembered him coming to Alabama was in July of 2017, a couple months before the murder, in November of 2017, when he murdered her mom. So I think that there is just an absolute abundance of evidence against Jason and Darren, and I think just to address prejudice very quickly, because even if the court finds that there was error with respect to the third-party perpetrator defense, the exclusion of that evidence, one of the questions is the strength of the evidence. And the strength of the evidence against Jason and Darren is compelling. Compare that with the evidence that they would have presented about Leonard Makowski being a third-party perpetrator. It is weak at best. In fact, it's so weak that they didn't even admit any of the so-called evidence into the record. That evidence is not even before the court. Now, ultimately, the video, the text messages, the suicide note, none of those were ever admitted into the actual record. Now, I don't think that it... Yes, Your Honor. Their characterizations of the evidence were certainly proffered, and I don't think that that ultimately matters, because even assuming the admissibility of that evidence, I think there are questions about that, too. But just assuming, best-case scenario for them, all of it's admissible, and all of it is just how they characterize it in the proffer, I don't think it matters at all, because it still doesn't show a connection between Leonard Makowski and this murder for hire. But I did at least want to point that out. The evidence, even as they have proffered it, is weak in terms of showing that Leonard Makowski was involved in this murder for hire. And that is one of the questions that the court should consider. There's not any... Although the charge in this case was a 1958 conspiracy? Did the evidence relating to Makowski have to be of a conspiracy nature? I'm not sure I understand Your Honor's question. I'm going to ask you to assume a set of facts that we don't have before us, okay? Assume that they had evidence that Makowski was the one driving the motorcycle on the 17th, and that someone saw him leave the vicinity of Sarah's house on the day of the murder, right? And so they point to him as the trigger man. No conspiracy, just him alone by himself. Does the fact that there's no conspiracy alleged with Makowski cause a problem in that hypothetical for the admission of the evidence? I don't think it does, Your Honor, because it still goes to one of the elements of the actual offense, and that... Well, I say the elements. It goes to their affirmative defense that they didn't do it. That some other person did it. Well, it goes to their defense that they didn't do it, is what I'm getting at. I think that it... Which presents the difficult question of how congruent third-party evidence has to be in terms of mirroring the criminal charges at issue. That's a hard question. Your Honor, I do want to point out that that's not actually the factual scenario that we have here. We don't have anything that links Leonard Makowski to the murder. In fact, we have... Yes, Your Honor, I just wanted to make sure that the facts in this case are much easier than a factual scenario that could exist in some other case because we don't have any link to a murder for hire or a conspiracy for murder for hire in this particular case. The last thing that I wanted to mention in terms of prejudice is that one of the other questions is the extent to which they were able to present their defense. And as I've already alluded to and discussed some, there was nothing that prevented them from arguing that someone else did it. They couldn't argue Leonard Makowski did it because he had an ironclad alibi and they had nothing linking him to the crime. But they still were free to argue, to cross-examine, do whatever they wanted in terms of suggesting someone else did it, and they did that in closings and cross-examination. And I see that my time has expired, Your Honor, so if there are no further questions. Thank you. Thank you, Your Honor. Just a few brief points. The first is the government's point about the defense could have asked about other motorcycles. Actually, what Darren's counsel said was, you know, I would like to ask this, but I'm trying to abide by the court's ruling that I can't talk about Makowski and I don't feel like I can get into this right now. What did the defense counsel ask about some other person having been on the motorcycle? Your Honor, he didn't feel like he could get into it, like it wouldn't have any probative value if he could not tie it back to Makowski, and Makowski was totally off limits for him based on the district court's ruling. But I would like to make a point about Nexus, which is that the line of cases dealing with alternative perpetrator at Nexus, I think, you know, Nexus is really just a specific application of 403 balancing that may be helpful in certain cases with certain fact patterns. I think the Supreme Court told us this expressly in Holmes v. South Carolina, and I think, you know, a lot of times it's not really a good fit for this scenario because when we're talking about an alternative perpetrator, usually we're dealing with, you know, criminal conduct on one date, and so it's easy to say there's no Nexus with the third party because the third party wasn't there. Here, you know, it's a little bit different. We have a conspiracy, and the particular date involved in the conspiracy that the government put on a whole mini-trial regarding is crucial, you know, to establishing their case. And then another point about sufficiency of the evidence very briefly. Everything the government listed, you know, as evidence that there was plenty, the evidence was more than sufficient. None of that established the existence of an agreement between Jason and Darren Starr. Well, circumstantially it goes to that issue. I mean, agreements in crime are not always proven by direct evidence, and this is, as the government concedes, a purely circumstantial case. There's no forensic evidence, there's no DNA evidence, there's no eyewitness testimony. There's nothing like that. But in criminal cases, an illegal agreement can be proven by circumstantial evidence. The question is whether or not the evidence here was enough to establish that, and the government's pointing to certain statements made by each of the brothers, which lends a nefarious tint to conversations that they had. For example, Jason telling the friend of his that he knows someone who might be able to get rid of his marital troubles for $2,000 to $3,000. And Darren saying to his mother and others when he's trying to get bond that Jason owes him money, but he can't tell him what the money is for, but it's coming, and it'll be more than enough to cover the bond. So, you know, those sorts of statements place some sort of a gloss on a circumstantial evidence case. Your Honor, I see my time has expired. May I attempt to address the nefarious gloss on the case? So I think here we, the evidence is very clear that Jason and Sarah were going through a contentious divorce, and Jason made some payments to Darren. The evidence is very weak as to the fact that those were actually for Sarah's murder. You know, the government points to the jail calls, but I'll point out Jason didn't bond him out. If he actually felt like he was in Darren's debt due to this, you know, big favor, wouldn't he have gotten Darren out of jail? Well, I mean, the point is, Your Honor, I don't think that this is, you know, overwhelming evidence of guilt. I think this is... It doesn't need to be, right? It doesn't need to be overwhelming evidence of guilt now that we have a conviction and we're reviewing it for sufficiency of the evidence. Well, Your Honor, a reasonable jury still has to be able to find each element of the crime charged beyond a reasonable doubt. And our point here is the evidence was extremely weak, particularly with respect to the evidence of an agreement to do this between Jason and Darren. It could be that Jason, that Darren decided to do this unilaterally to help out his brother. That's not enough to prove Jason's guilt. Thank you, Your Honor. Just very briefly, I think the question about the inclusion of those facts and the statement of the facts just goes to show how very, very tempting it is to shift those facts from being not for the truth to being for the truth. And that temptation, if it's tempting to us lawyers, then it's probably even more so tempting to a jury to have that shift occur. And I think that's the problem. I think the nature of what Van Hoos testified to, I don't think there was one. I think the difference, as far as the alternative theory, the other guy did it theory, what makes that particularly egregious not to have that come in in this case is two things. One, it is a conspiracy and we battered that around today. That changes the proof greatly. It's not a bank robbery. It's not a whodunit with just a one insular incident on a day at a time. It is a conspiracy that covers a period of time. But I think even more so, it's just the circumstantial nature of the case. And I disagree. I think the evidence is incredibly circumstantial. And all of the things that are pointed to, as far as Darin Starr, share an equally reasonable, innocent explanation. I mean, he came to Coffee County to visit his mother on Thanksgiving. That's not too unbelievable. And I don't want to use it for that. I think I want to use it for, to show that the things that the government points to for Darin Starr, there are explanations for it. The things that the defense was pointing to for Murkowski, not as much. I mean, he's directly talking to Jason Starr about the death of his wife and the repercussions it might have on him if she's murdered. There's not much else you can do with that. The fact that he wrote this suicide note that tries to implicate other people. Those things, the circumstances seem to be more geared and tied to a conspiracy for murder for hire than the more innocuous activities of Darin Starr that have a reasonable explanation. Is it really the other guy did it? Because Murkowski had an alibi with regard to the death. It's that Murkowski was the one on the motorcycle on November 18th. Well, and that goes to the conspiracy nature of it. Because he doesn't have to do everything. In a conspiracy, there's usually a division of labor. He can be in a helicopter on the day that it happens, but he can be involved in a conspiracy on the other days where acts were taken that the government uses to investigate that conspiracy. Unless there's other questions, I'll yield the rest of my time.